IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

IYMAAN WILLIAMS,                    *
                                    *
        Plaintiff,                  *
                                    *
        v.                          *          CV 121-145
                                    *
AUGUSTA, GA; THE GEORGIA PUBLIC     *
DEFENDER COUNCIL; THE AUGUSTA       *
CIRCUIT   PUBLIC   DEFENDER'S       *
OFFICE; and KATHERINE MASON, in     *
her individual capacity,            *
                                    *
        Defendants.                 *

---

**O R D E R**

---

Currently pending before the Court are Defendants Georgia

Public Defender Council ("GPDC") and Katherine Mason's motion to

dismiss (Doc. 24) and Defendant Augusta, Georgia's[1] ("Augusta")

motion to dismiss (Doc. 25).   For the reasons that follow,

Defendants' motions are **GRANTED**.


**I. BACKGROUND**

Plaintiff, an African American female, was employed as an

Assistant Public Defender through the Augusta Judicial Circuit

Public Defender's ("AJCPD") Office from January 2, 2016 until her

termination on October 24, 2019.   (Am. Compl., Doc. 22, at 3.)

---

[1] Defendant Augusta was improperly named as "Consolidated Government of Augusta,
GA" in the Amended Complaint; however, the Court has since corrected the mistake
and the proper Parties are now reflected on the docket.

The AJCPD Office is a department within Defendant Augusta, and Defendant Augusta offered Plaintiff her letter of employment, hosted a hiring orientation, and administered Plaintiff's background check and drug screening. (Id.) GPDC held and organized yearly training Plaintiff was required to attend. (Id. at 4.) Plaintiff states she was jointly employed by all Defendants, and all Defendants jointly retained control of the terms and conditions of Plaintiff's employment. (Id. at 3.)

During the relevant times, Defendant Mason was the AJCPD and had the authority to hire, promote, demote, terminate, supervise, and define the job duties of Plaintiff. (Id. at 2, 4.) Defendant Mason was employed by GPDC and AJCPD Office. (Id. at 4.) She was required to follow GPDC's performance matrix for discipline and GPDC's policy for employee termination. (Id.)

The AJCPD Office consists of state and superior court attorneys – all newly hired attorneys start in state court and can be promoted to superior court by Defendant Mason. (Id. at 5.) Plaintiff was promoted to a superior court team in 2017 and remained on a superior court team until her termination. (Id.) There were originally two members of her team – Plaintiff and her supervisor, Lyndsey A. Hix, a Caucasian female. (Id.) Then in November 2018, Jennifer Cross, another Caucasian female, joined her team and was given a lesser caseload to start, contrary to the standard policy of equal case distribution. (Id. at 6.) This

2

lesser case load was ordered, authorized, and approved by Defendant Mason. (Id.)   On November 2, 2018, Plaintiff complained to Ms. Hix that it was unequal and "inconsistent with the standard practice of equal distribution [of cases]," but she did not receive a response. (Id.)   During a November 6, 2018 office meeting, Plaintiff again reported her concerns. (Id.)   Following this meeting, Ms. Hix emailed Plaintiff and instructed her to attend a meeting with herself and Mr. Lee Prescott, Chief Assistant Public Defender. (Id.)   During this meeting, Plaintiff again raised concerns regarding the unequal case distribution and stated it was biased and unfair. (Id. at 7.)   "Mr. Prescott shouted at Plaintiff in a hostile and threatening manner" and "accused Plaintiff of creating a conspiracy." (Id.)

After Plaintiff complained, she was subjected to "micromanaging" by Ms. Hix and harassing behavior from other supervising attorneys. (Id.)   For example, on January 3, 2019, Mr. Todd Mitchell questioned Plaintiff regarding her use of sick leave, and on January 4, 2019, Defendant Mason informed Plaintiff she was changing some of her sick leave hours to personal leave. (Id.)   Plaintiff submitted another written complaint regarding the ongoing harassment. (Id. at 8.)

In February 2019, Plaintiff was informed she would be transferred to another team in March 2019 and her new leader would be Mr. Robert MacGregor, a Caucasian male. (Id.)   Before the

3

transfer, Ms. Hix and Defendant Mason informed Plaintiff her new workload would be more difficult and that she might have to work weekends and stay late. (Id.) After her transfer, "she continued to be subjected to ongoing harassment, unfair targeting, intense scrutiny, nitpicking, micromanaging, and [a] hostile work environment by her supervising attorneys and Defendant Mason." (Id.) In August 2019, Mr. Mitchell wrongly accused Plaintiff of not submitting her appeal report, which was due every month; however, upon Plaintiff's investigation, she discovered her report was intentionally deleted to make it appear she had not submitted it. (Id. at 9.) Then in October 2019, Defendant Mason pulled two client letters from Plaintiff's mailbox and wrongly alleged Plaintiff had not communicated with the clients. (Id.) The same day, Plaintiff reported to Mr. MacGregor she felt harassed and unfairly treated. (Id.)

Later in October, Defendant Mason began pulling Plaintiff's files and notating them, as well as reviewing her emails from the last 30 days and contacting her bonded clients. (Id. at 9-10.) On October 24, 2019, Plaintiff emailed Mr. MacGregor and asked why her files were being pulled, reported the actions were discriminatory, and explained the attorney she inherited her caseload from had hardly worked on the files. (Id.) Plaintiff was then asked to attend a meeting with her supervising attorneys, but "declined to attend the meeting alone due to the ongoing

harassment, discrimination, and her concerns about being subjected to a hostile encounter." (Id. at 10.) Plaintiff requested a representative from Defendant Augusta's Human Resources department be present at the meeting. (Id.) Instead, on October 25, 2019, Plaintiff was informed via an email from Defendant Mason that she was terminated. (Id.) Defendant Mason then informed Defendant Augusta of Plaintiff's termination. (Id. at 11.) Defendant Mason allegedly failed to follow GPDC's policy regarding termination and the terms and conditions of Plaintiff's employment. (Id.) Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter on June 23, 2021.[2] (Id. at 12; Doc. 22-2.)

Plaintiff originally filed suit in this Court against all Defendants on September 16, 2021. (Doc. 1.) Defendants Mason, GPDC, and Augusta filed motions to dismiss. (Docs. 20, 21.) Plaintiff then filed an Amended Complaint on February 7, 2022. (Am. Compl.) Based on this, the original motions to dismiss (Docs. 20, 21) are **DENIED AS MOOT**.[3]

---

[2] "In order to assert a claim of racial discrimination under Title VII, a claimant must file a complaint with the EEOC within 180 days after the alleged discriminatory practice occurred." Stafford v. Muscogee Cnty. Bd. of Educ., 688 F.2d 1383, 1387 (11th Cir. 1982) (citing 42 U.S.C. § 2000e-5(e)).

[3] It is well established that "[a]n amended complaint supersedes the original complaint, and thus renders moot a motion to dismiss the original complaint." S. Pilot Ins. Co. v. CECS, Inc., 15 F. Supp. 3d 1284, 1287 n.1 (N.D. Ga. 2013) (citation omitted).

Plaintiff's Amended Complaint asserts six claims for relief: (1) Title VII race discrimination as to Defendants Augusta, AJCPD Office, and GPDC; (2) Title VII gender discrimination as to Defendants Augusta, AJCPD Office, and GPDC; (3) Title VII retaliation as to Defendants Augusta, AJCPD Office, and GPDC; (4) § 1983 race discrimination as to Defendants Augusta, AJCPD Office, and Mason; (5) § 1983 retaliation as to Defendants Augusta, AJCPD Office, and Mason; and (6) § 1988 attorney's fees and costs as to Defendants Augusta, AJCPD Office, and Mason.  (Id. at 12-16.)

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4] Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

---

[4] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to Plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

### III. DISCUSSION

Defendants GPDC, Mason, and Augusta move to dismiss for various reasons. The Court addresses their motions below. (Docs. 24, 25.)

### A. Defendants GPDC and Mason's Motion to Dismiss (Doc. 24)

GPDC and Defendant Mason move to dismiss because: (1) GPDC is not Plaintiff's employer; (2) Defendant Mason is entitled to qualified immunity; and (3) any claims that took place prior to September 16, 2019 are time barred. (Doc. 24.)

#### 1. GPDC as Plaintiff's Employer

GPDC argues it is not Plaintiff's employer and Title VII claims are only to be brought against employers, so Plaintiff has failed to state a claim. (Id. at 6.) It asserts it is only mentioned a few times in the Amended Complaint, none of which illustrate it actually exerted any control over the essential functions of Plaintiff's job. (Id. at 7.) Further, it argues Plaintiff's allegations are merely conclusory, not factual, and insufficient to overcome dismissal. (Id.) Pursuant to O.C.G.A. § 17-12-31, GPDC argues Plaintiff served at the pleasure of the AJCPD, and the AJCPD defined Plaintiff's job duties and made the decision to terminate her. (Id. at 9-10.)

Plaintiff rebuts GPDC's position, arguing "GPDC had clear control over the fundamental aspects of Plaintiff's employment, including the terms and conditions." (Doc. 31, at 7.) She alleges

GPDC is a joint employer along with all the other Defendants. (Id. at 8.) Plaintiff was required to attend and complete yearly training held by GPDC, and Defendant Mason was required to follow GPDC's performance matrix and termination policy. (Id. at 9.) She emphasizes that "all Defendants jointly retained control of the terms and conditions of employment of Plaintiff, and jointly shared or co-determined those matters concerning the essential terms and conditions of Plaintiff's employment." (Id.)

"A Title VII workplace discrimination claim can only be brought by an employee against [her] employer." Peppers v. Cobb Cnty., 835 F.3d 1289, 1297 (11th Cir. 2016) (citations omitted). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b). The test for determining joint employers is relatively straightforward:

> The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus the joint employer concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

Peppers, 835 F.3d at 1300 (alterations omitted) (quoting Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1360 (11th Cir. 1994)).

"The joint employment relationship . . . is employee-specific."
Id. (citation omitted).

To use the Peppers test, the Court must look at which entity
controlled the fundamental aspects of the employment relationship
giving rise to the claim. Childs v. Macon-Bibb Cnty. Indus. Auth.,
No. 5:18-cv-328, 2020 WL 3130301, at *7 (M.D. Ga. June 12, 2020)
(citing Peppers, 835 F.3d at 1297.) "This general premise requires
a specific consideration of the totality of the employment
relationship: namely, how much control . . . the alleged employer[]
exerted on [Plaintiff] and whether [the alleged employer] had the
power to hire, fire, or modify the terms and conditions of her
employment. Id.; see also Davis v. Fulton Cnty., No. 1:18-cv-
4360, 2020 WL 11191818, at *2 (N.D. Ga. Mar. 16, 2020) ("The focal
point of the joint employer inquiry is not which entity controls
the specific aspect of the relationship giving rise to the
discrimination claim, but rather which entity or entities
control[s] the fundamental and essential aspects of the employment
relationship when taken as a whole." (quoting Peppers, 835 F.3d at
1301)).  The Eleventh Circuit has held that "[g]overnmental
subdivisions such as counties or towns, or smaller subdivisions
such as local agencies, may share sources of ultimate political
control or funding, yet be wholly distinct with respect to their
day-to-day operations or their control over relationships with
employees." Lyes v. City of Riviera Beach, 166 F.3d 1332, 1343

(11th Cir. 1999).  "When determining whether governmental entities are joint employers, a court 'must remain mindful of the state's expressed determination that the agencies and subdivisions of government are divided and separated.'"  <u>Davis</u>, 2020 WL 11191818, at *2 (quoting <u>Peppers</u>, 835 F.3d at 1299).

Relevant to the Court's inquiry is that O.C.G.A. § 17-12-31 provides:

> (a) The circuit public defender in each judicial circuit may employ additional assistant circuit public defenders . . . if the employment of such additional personnel is provided for by local law or if the employment of such additional personnel is specifically authorized and funded by the governing authority of the county or counties comprising the judicial circuit.  The circuit public defender shall define the duties and fix the title of any attorney or other employee of the office of the circuit public defender.
>
> (b) Personnel employed by the circuit public defender pursuant to this Code section shall serve at the pleasure of the circuit public defender and shall be compensated by the county or counties comprising the judicial circuit in the manner and in an amount fixed either by local Act or by the circuit public defender with the specific approval of the county or counties comprising the judicial circuit.

When looking at the employment relationship taken as a whole, the Court is not convinced GPDC was Plaintiff's joint employer. Pursuant to the Georgia Code, the circuit public defender – Defendant Mason – controlled the terms and duties of Plaintiff's position and Plaintiff served at the pleasure of Defendant Mason. Although GPDC held and organized yearly training Plaintiff was

required to attend, that is not enough to put it in the category of "controlling" Plaintiff's position.  As stated by the Eleventh Circuit, the Court cannot "disregard the state's decision to separate its governmental subdivisions." Peppers, 835 F.3d at 1299.  The GPDC was responsible for hiring Defendant Mason; however, it did not have any control over the day-to-day operations of the AJCPD Office just as it has no control over other cities' and counties' public defender offices.  Additionally, the allegations provide that Defendant Mason terminated Plaintiff and later notified the GPDC, illustrating it was not involved in that decision.  (Am. Compl., at 10.)  Based on the foregoing, the Court finds GPDC was not Plaintiff's joint employer, and therefore Plaintiff's Title VII claims against it are improper and shall be dismissed.

2. Defendant Mason Qualified Immunity

Defendant Mason argues she is entitled to qualified immunity and therefore the claims against her should also be dismissed.  (Doc. 24, at 12-20.)  She asserts she acted within her discretionary authority during all relevant times, and there are no allegations she violated Plaintiff's clearly established constitutional rights.  (Id.)  Plaintiff does not dispute Defendant Mason acted within her discretionary authority; therefore, the only issue for the Court to determine is whether she sufficiently

alleged Defendant Mason violated her clearly established constitutional rights. (See Doc. 31, at 10 n.3.)

a. *Qualified Immunity Standard*

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618 F.3d 1240, 1254 (11th Cir. 2010) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)) (alterations and internal quotation marks omitted). Qualified immunity "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and internal quotation marks omitted). In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (quoting Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

It is undisputed Defendant Mason acted within her discretionary authority, so the first step of the qualified immunity analysis is complete. See Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346)

("To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority."). Therefore, "the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (quoting Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003)). Plaintiff must allege facts to prove Defendant Mason's conduct violated a constitutional right. See Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine 'whether the right was clearly established.'" Id. (quoting Saucier v. Katz, 533 U.S. 194 (2001)).

"For a constitutional right to be clearly established so that qualified immunity does not apply, the contours of the right must be sufficiently clear that a reasonable official would understand that what [she] is doing violates that right." Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (internal quotations omitted); see also Johnson v. City of Miami Beach, 18 F.4th 1267, 1273 (11th Cir. 2021) ("A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." (quotations and citation omitted)). "The usual way of establishing

14

that a constitutional violation was clearly established law is by pointing to a case, in existence at the time, in which the Supreme Court or [the Eleventh Circuit] found a violation based on materially similar facts." Johnson, 18 F.4th at 1273 (citation omitted).

> b. *Analysis*

Plaintiff alleges § 1983 claims against Defendant Mason for race discrimination and retaliation and moves for attorney's fees and costs based on these claims. (Am. Compl., at 14-16.) Defendant Mason argues Plaintiff cannot prove that when faced with an employee who refused to attend a meeting with her supervisors, a reasonable person in Defendant Mason's position as the AJCPD would have known it was a violation of clearly established law to terminate the individual's employment. (Doc. 24, at 17.) Further, in response to all of Plaintiff's other allegations against her, Defendant Mason argues "Plaintiff cannot point to any constitutional right that she has to be free from these actions taken by Defendant Mason or point to any 'clearly established law' that Defendant Mason violated." (Id. at 18.)

In response, Plaintiff argues she asserted "a pattern of race discrimination against her by Defendants, including Defendant Mason." (Doc. 31, at 10.) She argues she made complaints, putting Defendant Mason on notice of the violations, and the actions Defendant Mason took against her differed from the treatment

received by Caucasian counterparts, as well as those who did not make race discrimination complaints. (Id.) Based on this, Plaintiff argues her right to be free from intentional racial discrimination was clearly established, and "a reasonable person in Defendant Mason's position would know that by taking the alleged disparate actions she would violate clearly established law." (Id. at 10-11.) Additionally, Plaintiff argues her allegations show Defendant Mason had the intent to discriminate against her.[5] (Id. at 11.) She argues again Defendant Mason took actions against her which differed from those taken against her Caucasian counterparts, and Plaintiff complained of the disparate treatment numerous times, yet Defendant Mason took no remedial action. (Id. at 11-12.) Plaintiff believes the fact she was terminated "supports that the ongoing discrimination was condoned and intentional." (Id. at 12.)

The Court must grant qualified immunity unless the facts, taken in the light most favorable to Plaintiff, show there was a violation of the Constitution *and* the illegality of Defendant Mason's actions was clearly established at the time of the incident. Gibson-Carter v. Rape Crisis Ctr., No. 4:19-cv-122,

---

[5] Plaintiff's Amended Complaint does not explicitly allege Defendant Mason had the intent to discriminate against Plaintiff; however, her response in opposition to the motion to dismiss argues the Amended Complaint "contains enough allegations to support that . . . Defendant Mason intended to discriminate against Plaintiff on the basis of her race." (Doc. 31, at 11.)

2020 WL 2815122, at *23 (S.D. Ga. May 29, 2020) (citing Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012)).  The Court can address either of the two prongs first.  See id. (citation omitted).  "The right to be free from racial discrimination in the employment context is clearly established."  Jolivette v. Arrowood, 180 F. App'x 883, 886 (11th Cir. 2006) (citations omitted).  Therefore, the Court must determine whether Plaintiff's allegations establish Defendant Mason violated this right – in other words, whether Defendant Mason discriminated against Plaintiff because of her race and retaliated against her because she complained of race discrimination.   Plaintiff alleges several instances directly involving Defendant Mason: (1) she changed some of Plaintiff's sick leave to personal leave; (2) she initiated Plaintiff's transfer to a different team with a more difficult workload; (3) she pulled two client letters from Plaintiff's inbox and then alleged Plaintiff had no communication with the clients; (4) she began pulling Plaintiff's files and notating them; (5) she reviewed Plaintiff's emails and contacted Plaintiff's bonded clients; and (6) she was ultimately responsible for firing Plaintiff.  (Am. Compl., at 7-11.)

   The Court finds Plaintiff's allegations insufficient to support her claims for racial discrimination or retaliation because the allegations are conclusory and do not contain adequate support for either claim.  Plaintiff alleges Defendant Mason took

"racially-motivated" actions against her and that such actions were not taken against her Caucasian counterparts; however, she provides absolutely no facts to substantiate these conclusory statements. (See Am. Compl., at 15.)   Additionally, she argues Defendant Mason had no legitimate business reason for her termination – another bare, conclusory assertion.   (See id.) Defendant Mason correcting Plaintiff's sick leave to personal time, pulling her files and contacting her clients, and ultimately firing her have no link to racial discrimination or retaliation beyond Plaintiff's bare allegations that the same was not done to Caucasian employees or employees who had not complained of race discrimination.   The Court finds Plaintiff's allegations are no more than unadorned, "the defendant unlawfully harmed me" accusations, which are insufficient to state a claim.   Iqbal, 556 U.S. at 678; see also Gibson-Carter, 2020 WL 2815122, at *14 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. . . . [A] number of Plaintiff's allegations are pled at the highest order of abstraction and therefore must be disregarded." (citations omitted)).   Specifically for retaliation, "the relevant inquiry is whether a reasonable person in [Mason's] position would have known under the circumstances alleged here that [her] conduct amounted to retaliation motivated by complaints of racial discrimination." Miller v. Ga. Pub. Def. Standards Council, No. 4:21-cv-129, 2022

WL 2678654, at *5 (M.D. Ga. July 11, 2022) (citations omitted). Defendant Mason set forth a legitimate reason for Plaintiff's termination – she refused to attend a meeting with her supervisors. (See Doc. 24, at 17.)  The Court finds Plaintiff failed to allege sufficient facts that her termination was the result of her participating in a statutorily protected activity.  See Miller, 2022 WL 2678654, at *5 ("To state a plausible § 1981 retaliation claim, a plaintiff must allege that she engaged in a statutorily protected activity that is causally connected to a materially adverse action taken by the defendant." (citations and quotations omitted).)

Overall, Plaintiff's allegations are insufficient for the Court to find Defendant Mason violated a clearly established constitutional right; therefore, Defendant Mason is entitled to qualified immunity for Plaintiff's claims.

## B. Defendant Augusta's Motion to Dismiss (Doc. 25)

Plaintiff asserts all 6 claims against Augusta: Title VII race and gender discrimination, Title VII retaliation, § 1983 race discrimination and retaliation, and § 1988 attorney's fees.  (Am. Compl., at 12-16.)  Augusta moves to dismiss because Plaintiff fails to identify a custom or policy by Augusta that led to the alleged violation of Plaintiff's constitutional rights.  (Doc. 25, at 1-2.)  Augusta argues it had no authority to control the entities and individuals at the center of Plaintiff's claims.  (Id.

at 2.)  Further, it argues her Title VII claims fail because she did not exhaust her administrative remedies with respect to Augusta and Augusta was not her employer.  (Id.)

1. § 1983 Claims

Augusta first moves to dismiss Plaintiff's § 1983 claims against it.  "The Supreme Court has placed strict limitations on municipal liability under § 1983."  Grech v. Clayton Cnty., 335 F.3d 1326, 1329 (11th Cir. 2003).  Under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), a municipality may be held liable only when its "official policy" causes a constitutional violation. See Grech, 335 F.3d at 1329.  Plaintiff can establish an official policy by alleging: "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county."  Id. (citations omitted).  Under either approach, Plaintiff (1) must show the local government "has authority and responsibility over the governmental function in issue and (2) must identify those officials who speak with final policymaking authority for that local governmental entity concerning the act alleged to have caused the particular constitutional violation in issue."  Id. at 1330 (citations omitted).

Plaintiff argues that pursuant to Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991), she can prove a policy of discrimination simply based on the actions of a "final

policymaker." (Doc. 30, at 12.) She argues that "[a]llowing Defendant Mason to have shared authority to terminate Plaintiff can show Defendant Augusta intended to give Defendant Mason policymaking authority with 'respect to the action ordered.'" (Id. at 13 (citing Brown, 923 F.2d at 1480).) Plaintiff believes her numerous allegations of race discrimination illustrate the discriminatory practices were accepted by Augusta. (Id. at 14.)

As explained above, Plaintiff must allege a custom or policy of discrimination, whether official or unofficial, or repeated acts of a final decisionmaker in order to hold Augusta liable under § 1983. Plaintiff has failed to allege any official or unofficial policy or any widespread practice by a final decision maker. In Brown, the Eleventh Circuit explained that "a municipal official who has 'final policymaking authority' in a certain area of the city's business may by his or her action subject the government to § 1983 liability when the challenged action falls within that authority." Brown, 923 F.2d at 1480. Plaintiff argues Defendant Mason was given policymaking authority by Augusta; however, Plaintiff does not even allege Defendant Mason is employed by Augusta - rather, she alleges Defendant Mason is employed by GPDC and AJCPD. (See Am. Compl., at 4.) Based on this, Defendant Mason cannot be considered a final policymaker for Augusta, and Plaintiff

alleges no custom or policy to attach liability.[6]   Therefore, Augusta's motion to dismiss is granted as to the § 1983 claims against it.

### 2. Title VII Claims

Augusta also moves to dismiss Plaintiff's Title VII claims because Plaintiff failed to exhaust her administrative remedies, and Augusta is not her employer. (Doc. 25, at 14-21.) Plaintiff argues Augusta, through the Augusta Law Department, had notice of her EEOC Charge and that Augusta was Plaintiff's employer under the joint-employer theory. (Doc. 30, at 8-9.)

"Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." McClure v. Oasis Outsourcing II, Inc., 674 F. App'x 873, 874 (11th Cir. 2016) (citing Virgo, 30 F.3d at 1358). However, this is a liberally construed requirement and courts consider several factors to determine whether the purposes of Title VII are met:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

---

[6] The Court also notes that pursuant to the Georgia Code, "[p]ersonnel employed by the circuit public defender . . . shall serve at the pleasure of the circuit public defender." O.C.G.A. § 17-12-31; see also Doc. 36, at 3 ("[U]nder Georgia law, [Augusta] lacked authority to control the fundamental and essential aspects of Plaintiff's employment.")

Virgo, 30 F.3d at 1358-59 (citations omitted).   In this case, Plaintiff brought her EEOC Charge against the AJCPD Office located at 902 Greene Street, Augusta, Georgia.   (Doc. 25-2.)   Augusta argues there were no "particulars to suggest or imply that Augusta could be liable for the alleged violations asserted in the Charge." (Doc. 25, at 15.)   Plaintiff disputes this, arguing Augusta had notice of the EEOC Charge because the Augusta Law Department participated on behalf of the AJCPD Office.   (Doc. 30, at 8 (citing Doc. 30-1).)

While true Augusta was aware of the EEOC Charge and responded to Plaintiff's EEOC Charge on behalf of the AJCPD Office, "Augusta did not respond on its own behalf because there were no allegations against it nor any mentioning of Augusta in the Charge."   (Doc. 36, at 5.)   While the Court agrees with Augusta that it was not named in the Charge and none of the allegations concern it, the Court also notes that "courts in this circuit are to liberally construe EEOC charges and avoid allowing procedural technicalities to bar discrimination claims."   McCutchen v. Dekalb Cnty. Sch. Dist., No. 1:19-cv-4956, 2021 WL 2943217, at *3 (N.D. Ga. Apr. 8, 2021) (citations omitted).   Based on this, the Court is hesitant to dismiss Plaintiff's claim on this ground.

The Court therefore turns to whether Augusta was Plaintiff's joint-employer using the analysis set forth above.   (See supra Part III(A)(1).)   As with GPDC and every other Defendant, Plaintiff

alleges Augusta was her joint employer.   (Am. Compl., at 3-4.)
Additionally, Plaintiff was subject to Augusta's Employee Manual
and Augusta compensated her and maintained her retirement account.
(Id. at 4.)   Nevertheless, the Court must keep in mind that
pursuant to O.C.G.A. § § 17-12-31, the circuit public defender -
Defendant Mason - controlled the terms and duties of Plaintiff's
position and Plaintiff served at the pleasure of Defendant Mason.
The Georgia statute also provides that persons employed by the
circuit public defender "shall be compensated by the county or
counties comprising the judicial circuit."   O.C.G.A. § 17-12-
31(b).  This is why Augusta was responsible for paying Plaintiff.

Once again, the Court "must remain mindful of the state's
expressed determination that the agencies and subdivisions of
government are divided and separated.'" Davis, 2020 WL 11191818,
at *2 (quoting Peppers, 835 F.3d at 1299).  Pursuant to this, the
Court finds Augusta was not Plaintiff's joint employer because "it
does not share or co-determine those matters that govern the
essential terms and conditions of Plaintiff's employment."   Id.
Even though Augusta paid Plaintiff, it "was not responsible for
the day-to-day operations, establishing Plaintiff's job
responsibilities or supervising Plaintiff in any way."   Id.
(citations omitted).  Pursuant to the Georgia Code, Defendant Mason
as circuit public defender held these responsibilities and powers.
Based on this, the Court finds Augusta was not Plaintiff's joint

employer; therefore, it cannot be held liable pursuant to Title VII and those claims shall be dismissed.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the original motions to dismiss (Docs. 20, 21) are **DENIED AS MOOT,** and Defendants Georgia Public Defender Council and Katherine Mason's motion to dismiss (Doc. 24) and Defendant Augusta, Georgia's motion to dismiss (Doc. 25) are **GRANTED.** The Clerk is **DIRECTED** to **TERMINATE** Defendants Georgia Public Defender Council, Katherine Mason, and Augusta, Georgia as Parties to this action.

**ORDER ENTERED** at Augusta, Georgia, this _15th_ day of August, 2022.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA